# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF TENNESSEE

# NASHVILLE DIVISION

| | |
|---|---|
| GIBSON GUITAR CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC., GAMESTOP CORPORATION, TOYS-R-US INC., WAL-MART STORES, INC., TARGET CORPORATION, AND KMART CORPORATION, SEARS ROEBUCK & CO, HARMONIX MUSIC SYSTEMS, INC., MTV, and ELECTRONIC ARTS INC.,<br><br>        Defendants. | Civil Action No. 3:08-0279<br><br>United States District Judge<br>Thomas A. Wiseman, Jr.<br><br>United States Magistrate Judge<br>Juliet Griffin<br><br>**Jury Demand** |

### MEMORANDUM IN SUPPORT OF MOTION FOR A STAY PENDING U.S.P.T.O.'S REEXAMINATION OF THE PATENT IN SUIT

Defendants Harmonix Music Systems, Inc., Viacom International Inc. (erroneously named herein as "MTV Networks"), and Electronic Arts Inc. (collectively the "Viacom Defendants"), joined by defendants Amazon.com, Inc., GameStop Corp., Toys-R-Us, Inc., Wal-Mart Stores Inc., Target Corp., Kmart Corp., and Sears, Roebuck and Co. (collectively the "Retailer Defendants"), respectfully submit the following memorandum of law in support of their motion for a stay pending the United States Patent & Trademark Office's reexamination of the patent at issue in this suit.

## I. INTRODUCTION

There is only one piece of intellectual property at issue in this action: U.S. Patent No. 5,990,405 ("the '405 Patent"). If the '405 Patent is successfully challenged before the United States Patent & Trademark Office (the "PTO"), plaintiff Gibson Guitar Corporation will have no basis to assert the infringement claims set forth in its Complaint.

Just such a challenge was recently filed. On April 24, 2008, a Request for *Ex Parte* Reexamination was filed with the PTO. The Request, which raises a substantial new question of patentability, asks the PTO to cancel some or all of the claims in the patent based on substantial prior art, or to narrow the scope of the patent's claims with regard to their potential coverage of the defendants' activities. Although the Request has not yet been granted, the PTO granted 92% and 97% of all reexamination requests in 2006 and 2007, respectively. (Declaration of William J. Charron ("Charron Decl."), Ex. B.) Because the outcome asked for in the Request would terminate or severely limit

Plaintiff's ability to pursue this lawsuit, or any other suit based on the '405 patent, a stay is warranted. If the claims at issue here are canceled by the PTO, there will be nothing for this court to decide. Indeed, even if the claims survive, but are narrowed by the patentee, a result that occurs frequently, this will have a significant impact on claim construction, and Gibson will be unable to collect any damages prior to the date its patent emerges from reexamination.

Here, the benefits of allowing the PTO to resolve the validity of the Plaintiff's patent claim prior to proceeding with litigation substantially outweigh any minimal prejudice to Plaintiff that might result from a stay. The advantages of a stay are tremendous: until the PTO's reexamination is complete, the patent claims are a moving target subject to cancellation, amendment, or the addition of new claims. The indeterminate status of the claims will complicate and frustrate any orderly procession of this action, leaving the Court and the parties with insufficient guidance on issues such as the proper scope of discovery, claim construction, and which (if any) patent claims will ultimately be in dispute at trial. On the other side of the equation, any possible prejudice to Plaintiff that might result from a stay is negligible. Indeed, Plaintiff delayed in filing this lawsuit for more than two years after the release of the *Guitar Hero* video game, one of the allegedly infringing products, thus undercutting any claim of prejudice. Moreover, the efficient use of the Court's limited resources is best served by granting a stay pending reexamination where this litigation is barely getting underway: the Amended Complaint was served on the Viacom Defendants and Retailer Defendants barely a month ago and the Court has yet to set a schedule with regard to any aspect of these proceedings.

2

In addition to preventing the Court and the parties from needlessly devoting time, effort, and resources to litigate patent claims that are likely to be cancelled or substantially modified during reexamination, the requested stay may also simplify the case by identifying terms that may need to be construed by the Court and by narrowing the relevant infringement and validity issues for discovery and trial. The Court's construction of any relevant patent claims that survive reexamination will benefit from the PTO's technical expertise in considering the prior art cited in the reexamination request. Thus, even in the unlikely event a claim were to survive reexamination without amendment, the issues before this Court would still be clarified because, for example, statements made during the reexamination proceedings will become part of the prosecution history and thus come to bear on the interpretation and scope of the claims at issue.

## II. STATEMENT OF FACTS

### A. This Litigation Is in Its Early Stages

Plaintiff filed this patent infringement action on March 16, 2008, against the Retailer Defendants. In its Complaint, Gibson alleged that the Retailer Defendants, through their sale of Activision Publishing, Inc.'s "Guitar Hero" series of video games (the "Guitar Hero Games"), infringe the '405 Patent, issued on November 23, 1999.

On April 4, 2008, Plaintiff filed an Amended Complaint adding the Viacom Defendants to this suit as defendants, alleging that the Viacom Defendants infringe the '405 Patent through their development, manufacture and/or sale of the *Guitar Hero* and *Rock Band* video games and accessories, and alleging that the Retailer Defendants

infringe the '405 Patent through their sale of the Guitar Hero Games and the *Rock Band* video games and accessories.[1] Neither the Viacom Defendants nor the Retailer Defendants have yet answered the Amended Complaint nor is the initial case management conference set.[2]

### B. The Request for Reexamination of the '405 Patent

On April 24, 2008, an *Ex Parte* Reexamination of the '405 Patent ("the Request") was filed with the PTO. (The Request is attached as Exhibit A to the Declaration of William J. Charron, which is filed contemporaneously herewith.) The Request relies primarily on five prior art references that disclose the limitations of the '405 Patent's claims 1-3, 11, 13-15, 25, and 28 (which includes all of the claims at issue in this case), thus raising a substantial new question of patentability. (Charron Decl., Ex. A (Detailed Support for the Request).) Four of these prior art references were not considered by the PTO during the course of the '405 Patent's prosecution. (*Id.*, Ex. A (Detailed Support for the Request), at 3-7.) The fifth reference, a continuation-in-part of a reference that was cited during prosecution of the '405 Patent, includes new matter not considered in that prior proceeding. (*Id.*)

---

[1] On March 20, 2008, only two weeks prior to filing its Amended Complaint in this action against the Viacom Defendants, Plaintiff filed an action against the Viacom Defendants, styled *Gibson Guitar Corp. v. Harmonix Music Systems, Inc., et al.*, Case No. 3:08-0294 (the "Standalone Action"). In the Standalone Action, which is also before this Court, Plaintiff asserts the same claims against the Viacom Defendants that it asserts in its Amended Complaint in this action. Yesterday, the Viacom Defendants filed a similar motion to stay in the Standalone Action.

[2] The Initial Case Management Conference in this action and the Standalone Action were both scheduled for May 12, 2008, but Magistrate Judge Griffin continued them in both actions. The parties will, however, participate in a telephone conference with Magistrate Judge Griffin on May 12, 2008, to address some issues related to scheduling.

The '405 Patent is directed toward a system for simulating participation in a musical performance. (*Id.*, Ex. A ('405 Patent (Exhibit 1 to the Request), col. 1, ll. 6-12).) Specifically, as shown in Figure 1 of the '405 Patent, an audio/video source (14) is adapted to provide music-related video data to a video display (11) and audio data to an interface box (18), where the audio data includes a pre-recorded sound track of a musical instrument (20). (*Id.* ('405 Patent, Fig. 1).) By playing the musical instrument (20), which is also connected to the interface box (18), at least one characteristic of the pre-recorded sound track can be controlled. (*Id.* ('405 Patent, Fig. 1 and col. 2, ll. 23-53).) The musical instrument (20) can thus be used to control particular characteristics of the pre-recorded instrument sound track, such as volume. (*Id.* ('405 Patent, col. 5, ll. 18-30).)

The Request demonstrates that such a system was well known in the art prior to the filing date of the '405 Patent, July 8, 1998. For example, U.S. Patent No. 5,488,196 ("the '196 Patent") predates the '405 Patent by more than four years and discloses an interactive music system comprising a MIDI controller, a computer (*i.e.*, audio/video source), a video display, a music synthesizer, and a MIDI interface.[3] (*Id.*, Ex. A ('196 Patent (Exhibit 2 to the Request), Fig. 1).) The computer in the '196 Patent includes a memory storage means for storing music score data, such as music-related video data (shown to the user on the video display), and a pre-recorded sound track of the musical

---

[3] Significantly, the '196 Patent envisioned implementation of the system on video game playing devices, such as the Nintendo NES and the Sega Genesis, precursors to the video game platforms at issue in the present dispute. (Charron Decl., Ex. A ('196 Patent (Exhibit 2 to the Request), col. 27, ll. 17-31).)

instrument, which is provided to the music synthesizer. (*See, e.g.*, *id.* at col. 9, ll. 38-55, col. 10, ll. 16-26.) Similar to the '405 Patent, the '196 Patent discloses that "playing" the MIDI controller can control the pre-recorded sound track's expressive characteristics, such as volume, timbre, and vibrato. (*See, e.g.*, *id.* at col. 10, ll. 27-34.) Had the Examiner been aware of the '196 Patent and the other prior art references cited in the Request during the '405 Patent's prosecution, the PTO likely would not have allowed claims 1-3, 11, 13-15, 25, and 28 of the '405 Patent to issue, or at least would have narrowed their scope to preclude their application to devices other than actual musical instruments transmitting audio signals (as opposed to electronic controllers sending electronic data packets).

## III. ARGUMENT

The determination as to whether to grant a stay pending the outcome of the PTO's reexamination is a matter soundly within the Court's discretion. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted).

In *Nilssen v. Universal Lighting Tech*, this Court granted a stay pending reexamination holding, *inter alia*, that the requested stay would "further the interests of judicial and party economy and may allow the Court to avail itself of the PTO's expertise in evaluating the validity of the patents." 2006 WL 38909, at *2 (M.D. Tenn. Jan. 5,

2006).[4] The Court further recognized that

> [o]ne purpose of the reexamination procedure is to eliminate trial of the issue of patent claim validity (when the claim is canceled by the PTO ), or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding). . . . The procedure was intended "to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts . . ."

*Id.* at *2 (internal citations omitted).

Here, just as in *Nilssen*, the proposed stay will further the interests of judicial and party economy and will allow the Court to avail itself of the PTO's expertise in evaluating the validity of the patent. Accordingly, this motion to stay pending reexamination proceedings affecting the '405 Patent should be granted.

### A. Granting The Motion for a Stay Will Promote Judicial Economy

The requested stay will ensure that the parties, and the Court, are not unduly burdened by having to litigate uncertain patent claims. *See EchoStar Technologies Corp. v. TiVo, Inc.*, 2006 WL 2501494, at *3-4 (E.D. Tex. July 14, 2006) ("[I]f the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims."). As other courts have routinely observed, granting a stay at this early juncture would promote judicial economy because, where reexamination results in effective invalidity of the patent, the suit will likely be dismissed. *Softview Computer Prods.*

---

[4] Pursuant to Local Rule 7.01(e)(5), all opinions cited in this memorandum that are not reported in one of the publications of the West Publishing Company are attached hereto.

*Corp. v. Haworth, Inc.*, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000); *Fisher Controls Co. v. Control Components, Inc.*, 443 F. Supp. 581, 582 (S.D. Iowa 1977).

A stay would also promote judicial economy because the PTO, with its particular expertise, will have first considered prior art presented to the Court. *See Softview Computer Prods. Corp.*, 2000 WL 1134471, at *2. Thus, a stay pending reexamination will enable the parties and the Court either to avoid the need for a civil trial on the validity of the '405 Patent's claims (*i.e.*, if the claims are canceled by the PTO) or to profit from the expert view of the PTO (*i.e.*, if any claims survive reexamination). *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *Ingro v. Tyco Indus., Inc.*, 1985 WL 1649, at *1 (N.D. Ill. May 31, 1985). The reexamination process therefore will serve its intended function of providing "an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts…." *Digital Magnetic Systems, Inc. v. Ansley*, 1982 WL 52160, at *1 (W.D. Okla. Mar. 1, 1982).

Moreover, because the '405 Patent is involved in litigation, reexamination must be conducted by the Patent Office with "special dispatch." 35 U.S.C. § 305. "[T]he [Patent Office] itself has interpreted special dispatch to require that 'reexamination proceedings will be 'special' throughout their pendency' in the office, and provides for an accelerated schedule." *Ethicon*, 849 F.2d at 1426 (quoting Manual of Patent Examining Procedure § 2261). Under Patent Office rules, "[a]ny cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases." Manual of Patent Examining Procedure § 2261.

In addition, granting a stay pending reexamination promotes judicial economy because the litigation cost will likely be reduced for both the parties and the Court regardless of the specific outcome of the reexamination. For example, the outcome of the reexamination may encourage a settlement without expenditure of further Court resources; the record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; and issues, defenses, and evidence will be more easily limited in pre-trial conferences after the reexamination. *See Softview Computer Prods. Corp.*, 2000 WL 1134471, at *2; *Fisher Controls Co.*, 443 F. Supp. at 582; *see also Sorensen v. Black and Decker Corp.*, 2007 WL 2696590, at *5 (S.D. Cal. Sept. 10, 2007) ("The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction.").

### B. The Benefits Provided By a Stay Outweigh Any Potential Prejudicial Effect

In determining whether to stay a patent infringement action pending reexamination of a patent, courts typically conduct a balancing test to weigh the benefits of staying the litigation against the burdens associated with the delay. *See EchoStar*, 2006 WL 2501494, at *1 (granting stay based in part on finding that stay would not unduly prejudice the plaintiff). In particular, courts consider: (1) whether a stay will simplify the issues in question and the trial of the case; (2) whether discovery is (or is about to be) complete and whether a trial date is imminent; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *See,*

9

*e.g.*, *Medicis Pharm. Corp. v. Upsher-Smith Laboratories, Inc.*, 486 F. Supp. 2d 990, 993-94 (D. Ariz. 2007); *Sorensen*, 2007 WL 2696590, at *3; *Werre v. Battenfield Tech., Inc.*, 2004 WL 2554568, at *1 (D. Or. Nov. 9, 2004). Here, because the benefits outweigh the burdens, the motion for a stay should be granted.

### 1. The Reexamination Proceeding Will Simplify and Narrow the Issues in This Case.

The validity of the '405 Patent is a central and potentially dispositive issue in this action. Consequently, the results of the PTO's reexamination may be outcome determinative and will, in all events, eliminate or narrow the scope of many issues in this case.

In light of the crowded field of prior art discovered and submitted for the PTO's consideration, (Charron Decl., Ex. A.), Plaintiff's patent claims will likely be disposed of entirely or significantly curtailed.[5] In the interim, any rulings by this Court concerning the scope of the '405 Patent's claims in their current form would be an empty exercise and a waste of judicial resources.

Even assuming, *arguendo*, that a claim were to survive reexamination without amendment, the issues before this Court would still be clarified. For example, because statements made during the reexamination proceedings become part of the prosecution history, the proposed stay will allow the intrinsic evidence to be fully developed before this Court begins the claim construction process. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (holding that statements

---

[5] According to the PTO's official, public statistics, in more than 70% of all reexaminations, the PTO either requires amendments or cancels claims. (Charron Decl., Ex. C.)

made during reexamination proceedings are relevant prosecution history when interpreting claims).

A stay is also warranted because no damages will be available for the period prior to the issuance of a "reexamined claim" of the '405 Patent unless the "original and reexamined claims are 'identical.'" *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998); *see also* 35 U.S.C. §307(b); *Bloom Engineering Co., Inc. v. North American Manufacturing Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). Because neither the parties nor the Court should be required to litigate damages issues related to the alleged infringement of patent claims that may be canceled or amended, the stay should be granted.

### 2. Granting a Stay Will Not Result in Any Waste at This Early Stage of the Case.

This litigation is fresh: the Amended Complaint was filed only five weeks ago; neither the Viacom Defendants nor the Retailer Defendants have yet answered the Amended Complaint; the initial case management conference has not been held; and Plaintiff served its first discovery requests only three weeks ago.[6] Courts routinely grant stays pending a PTO determination where, as here, the litigation is in its infancy. *See Ho Keung Tse v. Apple Inc.*, 2007 WL 2904279, at *1-5 (N.D. Cal. Oct. 4, 2007) (granting stay because no substantive discovery had taken place and no showing of undue prejudice

---

[6] The Viacom Defendants believe that, at least as to them, Plaintiff's discovery requests were premature because they were not parties to the case at the time Magistrate Judge Griffin modified the customary and default discovery procedure by lifting, *sua sponte*, the Rule 26(d) stay of discovery. (D.E. 14 (March 31 Order).) Nonetheless, as a matter of clarity, fairness, and conservation of resources for all parties, the defendants have asked Magistrate Judge Griffin to reinstate the Rule 26(d) stay of discovery as to all parties until this and the other pending motions are decided.

11

to patentee); *Nanometrics, Inc. v. Nova Measuring Instr., Ltd.*, 2007 WL 627920, at *2-4 (N.D. Cal. Feb. 26, 2007) (granting stay when little discovery had been taken and no undue prejudice to patentee besides mere delay); *Broadcast Innovation, L.L.C. v. Charter Comm., Inc.*, 2006 WL 1897165, at *8-12 (D. Colo. July 11, 2006) (granting stay despite three-month proximity to trial when significant work and motion practice remained, including summary judgment motions, expert reports, expert depositions, supplemental document production, and supplemental responses to written discovery). Since the parties have been litigating this case for weeks – not months or years – and have not yet expended significant resources on case preparation, a stay should be granted. *See Medicis Pharm. Corp.*, 486 F. Supp. 2d at 993-94 (granting stay in part because the case was in its early stages, as only limited discovery had taken place and no trial date had been set).

### 3. Gibson Will Not Be Unduly Prejudiced or Disadvantaged by a Stay.

Plaintiff waited more than two years after the release of the *Guitar Hero* video game—one of the products that Plaintiff alleges infringes the '405 Patent—to bring this lawsuit. Plaintiff's self imposed delay in bringing this action demonstrates that it will not suffer any prejudice from an additional short delay to determine if it has any patent claims left to assert after the reexamination process. *See Sorensen*, 2007 WL 2696590, at *5.

Even if Plaintiff had not sat on its rights for more than two years, it still would be unable to establish prejudice. Assuming there are valid patent claims that survive

reexamination, Plaintiff will not be precluded from pursing its infringement claims.

Furthermore, "[t]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *Photoflex Products, Inc. v. Circa 3 LLC*, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006).

### C. A Stay Should Be Granted Even Though the Reexamination Request Is Pending

The PTO is required to either grant or deny the reexamination request within ninety days from its filing. 35 U.S.C. § 303(a); 37 C.F.R. §1.515(a). Because the PTO will issue its decision within this short time period, and because it is overwhelmingly likely that the PTO will grant the request for reexamination,[7] the fact that the request is currently pending does not weigh against granting a stay. Indeed, *in Nilssen v. Universal Lighting Techs., Inc.*, this Court granted a stay notwithstanding the fact that the PTO had not yet determined whether to reexamine the patents at issue. *Nilssen*, 2006 WL 38909, at *2. A number of other courts have done the same.

For example, in *Ho Keung Tse v. Apple Inc.*, the court granted a stay pending reexamination even though the PTO had not yet decided to reexamine the patent at issue where, as here, none of the parties had served discovery, none of the parties had noticed or taken any depositions, no claim construction proposals or briefing had taken place, and no dispositive motions had been filed. 2007 WL 2904279, at *2-3. As the *Ho Keung Tse* court noted, "[i]n light of the 'liberal policy' favoring stays pending reexamination, a court can grant a stay even if the Patent Office is still considering whether to grant a

---

[7] Not only does the Request raise substantial new questions of patentability, but the PTO has historically granted over 90% of requests for reexamination. (Charron Decl., Ex. B.)

13

party's reexamination request." *Id.* at *2 (citations omitted). Similarly, the court in *Pass & Seymour, Inc. v. Hubbell Inc.* granted a stay pending reexamination prior to the PTO's decision to reexamine the two patents at issue because of "the desirability of drawing upon the expertise of the PTO regarding the complex areas of patentability implicated in [the] action." 532 F. Supp. 2d at 436.

Where, as here, a stay would promote judicial economy and the benefits of the stay to the Court and the parties outweigh any potential prejudicial effect, a stay is warranted even though the reexamination request is pending. *Ho Keung Tse*, 2007 WL 2904279, at *2-3; *Pass & Seymour, Inc.*, 532 F. Supp. 2d at 436; *Sorensen*, 2007 WL 2696590, at *7 (staying the action pending the PTO's decision on the application for reexamination); *Brown v. Shimano American Corp.*, 1991 WL 133586, at *1 (C.D. Cal. Jan. 29, 1991) (staying the action pending the PTO's ruling on whether to reexamine the patent at issue).

## IV. CONCLUSION

For the foregoing reasons, the Viacom Defendants and Retailer Defendants respectfully request this Court grant their Motion for a Stay Pending Reexamination.

Dated: May 7, 2008                    Respectfully submitted,


                                      By: /s/ Aubrey B. Harwell, III
                                              Aubrey B. Harwell, III


                                      WILLIAM T. RAMSEY, No. 9245
                                      AUBREY B. HARWELL, III, No. 17394
                                      NEAL & HARWELL, PLC
                                      Suite 2000, One Nashville Place
                                      150 4th Avenue North
                                      Nashville, TN 37219-2498
                                      Telephone:   (615) 244-1713
                                      Facsimile:   (615) 726-0573

                                      MARK A. SAMUELS (*pro hac vice*)
                                      ROBERT M. SCHWARTZ (*pro hac vice*)
                                      WILLIAM J. CHARRON (*pro hac vice*)
                                      O'MELVENY & MYERS LLP
                                      400 South Hope Street
                                      Los Angeles, CA 90071-2899
                                      Telephone:   (213) 430-6000
                                      Facsimile:   (213) 430-6407

                                      Attorneys for Defendants Harmonix Music
                                      Systems, Inc., Viacom International Inc.
                                      (erroneously named in the Complaint as
                                      "MTV Networks"), and Electronic Arts
                                      Inc.

By: /s/ Samuel D. Lipshie (by Aubrey B. Harwell III w/ express permission)
      Samuel D. Lipshie

Samuel D. Lipshie
Thor Y. Urness
Jonathan D. Rose
BOULT CUMMINGS CONNERS BERRY, PLC
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203
Telephone: (615) 252-2332

Counsel for Defendants Wal-Mart Stores Inc., Sears, Roebuck & Co., Target Corporation, Kmart Corporation, Amazon.com, Inc., GameStop Corporation, and Toys-R-Us, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May 2008, I caused a true and correct copy of the foregoing:

**MEMORANDUM IN SUPPORT OF MOTION FOR A STAY PENDING U.S.P.T.O.'s REEXAMINATION OF THE PATENT IN SUIT**

to be served via hand delivery and via the Court's electronic filing system upon the following counsel of record for plaintiff:

Douglas R. Pierce, Esq.
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
Telephone: (615) 259-3456
Facsimile: (615) 726-5419

and to be served via the Court's electronic filing system upon the following counsel of record for plaintiff:

Matthew W. Siegal, Esq.
Richard Eskew, Esq.
Jason M. Sobel, Esq.
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400

          /s/ Aubrey B. Harwell, III
          Aubrey B. Harwell, III