IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **Gibson Guitar Corp.,**            ) | |
|                                                                       ) | |
|     **Plaintiff,**                          ) | |
|                                                                       ) | Civil Action No.  3:08-0279 |
| **v.**                                              ) | |
|                                                                       ) | |
| **Wal-Mart Stores Inc., Target Corporation, Kmart**            ) | |
| **Corporation, Sears, Roebuck & Co.,**                                       ) | **Judge Wiseman** |
| **Amazon.com, Inc., GameStop Corp.,**                                        ) | **Magistrate Judge Griffin** |
| **Toys-R-Us, Inc., Harmonix Music Systems, Inc.,**                           ) | |
| **MTV (a division of Viacom International, Inc.),**                          ) | |
| **and Electronic Arts, Inc.,**                                               ) | |
|                                                                       ) | |
|     **Defendants.**                     ) | |

_____

**OPPOSITION OF GIBSON CORPORATION TO DEFENDANTS' MOTION TO STAY
THE INITIAL CASE MANAGEMENT CONFERENCE AND STAY DISCOVERY**
_____

Plaintiff, Gibson Guitar Corp. ("Gibson"), hereby responds, pursuant to the Order of Magistrate Judge Juliet Griffin to Defendants' Motion to Continue the Initial Case Management Conference and Reinstate the Rule 26(d) Stay of Discovery.

## BACKGROUND

This case involves the accusation by Gibson that the "Retailer" defendants (Wal-Mart, Target, K-Mart, Sears, Amazon.com, GameStop and ToyRUs) sell the Guitar Hero and the Rock Band Video Game products that infringe Gibson's patent (U.S. Patent No. 5,909,405 of the '405 Patent). In this action, Gibson has also asserted that the Rock Band Video Game products sold by the "Viacom" defendants (Harmonix, MTV and Electronic Arts) infringe the '405 Patent. In

NY 71450848

the event Gibson prevails, the Viacom defendants and the Retailer defendants will be jointly and severally liable.

In a separate action in this Court, now also before Judge Wiseman and Magistrate Judge Griffin, (referred to by Defendants as the "Standalone" action), Gibson sued the Viacom defendants for infringing the '405 Patent, and would like to combine the two cases. The standalone action involves common questions of law and fact with this action and should be consolidated with this action under Rule 42. Ordinarily, Gibson would simply withdraw the standalone action, but (i) the Viacom Defendants have answered; and (ii) the Retailer Defendants have moved to stay <u>this</u> action based in part on the sequence of case filing dates compared to a Declaratory Judgment case brought in Los Angeles by their source of Guitar Hero (Activision, Inc.).

Counsel for Gibson requested on several occasions that counsel for the Viacom defendants agree to consolidate the two actions, but to date, counsel for the Viacom defendants' only response has been a request and now a motion to dismiss the Viacom defendants from this action. If their motion is granted, this action would remain against the Retailer defendants who are accused of infringing the Guitar Hero <u>and</u> the Rock Band products and the standalone action would be maintained against the Viacom defendants who supply those retailers with the Rock Band products, but not the Guitar Hero products. Maintaining these two actions separate, even though they include common issues of law and fact surrounding the infringement of the '405 Patent by the Rock Band products is inefficient and illogical. Rather, the standalone action should be consolidated with this action.

NY 71450848

As noted above, a third action exists, in Los Angeles, as a result of Activision's (Activision sells the Guitar Hero product)[1] anticipatory filing of a declaratory judgment action of invalidity and non-infringement against Gibson while at the same time, leading Gibson to believe that the parties were still negotiating a private resolution to their dispute. Beginning in January of this year, Gibson charged Activision with infringing the '405 Patent and requested that Activision negotiate a patent license.[2] Activision requested a more thorough description of the infringement issue and Gibson provided that explanation.[3] However, after the close of business hours on March 10, 2008, Activision advised Gibson by letter that it would not agree to take a license under the '405 Patent and on March 11, Activision filed the declaratory judgment suit in Los Angeles.[4] Thus, Activision's anticipatory filing denied Gibson of its choice of this forum.

**DISCUSSION**

Gibson agrees that the parties should delay implementing a case management schedule until after the various procedural motions have been resolved, both here and in Los Angeles and after the Patent Office determines whether or not to re-examine the '405 Patent in light of Viacom defendants' re-examination request. However, Gibson believes that it is appropriate to consolidate the two cases now currently before the same Judge and Magistrate Judge and to permit discovery of matters unrelated to the issues raised in the re-examination request. Thus, Gibson proposes that this court should not withdraw its order that permits discovery to proceed.

---

[1] Defendants allege that as the "publisher" for Guitar Hero, Activision is like a manufacturer. However, for a video game, the party with the best knowledge of the game's operation is the developer, as opposed to the party that publishes copies of the video disks. For both games, the developer is Harmonix.

[2] See Retailer Defendants' Memorandum of Law in Support of Their Motion to Dismiss or, in the Alternative to Stay this Action in Favor of a First-Filed Action in the Central District of California at p. 5.

[3] Id. at 5.

[4] Id. at 5-6.

In their just filed motion to stay this case pending re-examination, the Defendants argue that the Court should defer to the expertise of the Patent Office in resolving issues relating to the validity of the '405 Patent. They also cite to Patent Office statistics (Attached as Charron Decl. Exhibit C) which indicate that 92% of requests for re-examination are granted. Gibson acknowledges the statistical probability of re-examination being granted, but contends that it is not assured. However, Gibson agrees that it makes sense to wait for the Patent Office to act before entering a case management schedule.

In addition to showing how often re-examination is granted, the Patent Office statistics show that 29% of the time re-examination is requested by a third party and 26% of all instances, the patent emerges from re-examination with <u>all claims confirmed valid</u>. (Charron Ex. C at 8(a)). Those statistics also confirm that all of the patent claims are deemed invalid only 10% of the time (12% of the time re-examination is requested by a third party). <u>Id.</u> at 58(b). Thus, based on Defendants' statistics, in all likelihood, the '405 Patent will emerge as valid from re-examination and there is an almost 30% statistical chance that the exact patent will emerge. Therefore, there is a high statistical likelihood that after re-examination concludes, the parties will be back in court, looking at the scheduling issue.

The Patent Office statistics show that the median pendency of a re-examination is about 18 months and that the average pendency lasts about two years. Thus, it would be judicially inefficient to put the case on hold for 1.5 to 2 years that could be used to pursue discovery of issues unrelated to the re-examination request. The Retailer defendants to this action are some of the largest companies in the world and would not be unduly burdened by producing sale figures, licenses and other information that will not be impacted by the re-examination procedure. As time passes, memories fade and documents become more difficult to locate. Thus, there is no

reason to completely stay this case based on the high chance that the patent will be confirmed by re-examination. However, issues such as claim interpretation (Markman) or expert discovery could well be put off.

## CONCLUSION

Based on the foregoing, this Court should defer setting a case management schedule until and if the Patent Office resolves the re-examination issue and the pending procedural motions are resolved. In the event the Patent Office does determine to re-examine the '405 Patent, this Court should nevertheless permit discovery as to issues unrelated to the re-examination proceeding, so as not to unduly delay these proceedings.

Dated: Nashville, Tennessee
May 8, 2008

Respectfully submitted,

/s/   Douglas R. Pierce
Douglas R. Pierce, BPR No. 10084
KING & BALLOW
1100 Union Street Plaza
315 Union Street
Nashville, Tennessee 37201
(615) 259-3456

OF COUNSEL:

STROOCK & STROOCK & LAVAN LLP
Matthew W. Siegal
Angie M. Hankins
Richard Eskew
Jason M. Sobel
180 Maiden Lane
New York, New York 10038-4982
212-806-5400

Attorneys for Plaintiff
Gibson Guitar Corporation

NY 71450848

## Certificate of Service

I hereby certify on this the 8th day of May 2008 that the foregoing Opposition of Gibson Corporation to Defendants' Motion to Stay the Initial Case Management Conference and Stay Discovery was filed with the Clerk's Office by using the CM/ECF system which will send a notice electronic filing to all CM/ECF participants.

/s/ Douglas R. Pierce