# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF TENNESSEE

# NASHVILLE DIVISION

| | |
|---|---|
| GIBSON GUITAR CORPORATION, | Civil Action No. 3:08-0279 |
| Plaintiff, | United States District Judge<br>Thomas A. Wiseman, Jr. |
| v. | |
| AMAZON.COM, INC., GAMESTOP CORPORATION, TOYS-R-US INC., WAL-MART STORES, INC., TARGET CORPORATION, KMART CORPORATION, SEARS, ROEBUCK & CO, HARMONIX MUSIC SYSTEMS, INC., VIACOM INTERNATIONAL INC., and ELECTRONIC ARTS INC., | United States Magistrate Judge<br>Juliet E. Griffin<br><br>**Jury Demand** |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR A STAY PENDING U.S.P.T.O.'S REEXAMINATION OF THE PATENT IN SUIT[1]**

---

[1] Defendants Harmonix Music Systems, Inc., Viacom International Inc. (ordered by Magistrate Judge Griffin on May 13, 2008 to be substituted for erroneously-named defendant MTV Networks), and Electronic Arts Inc. (collectively the "Viacom Defendants"), joined by Defendants Amazon.com, Inc., GameStop Corp., Toys-R-Us, Inc., Wal-Mart Stores, Inc., Target Corp., Kmart Corp., and Sears, Roebuck and Co. (collectively the "Retailer Defendants"), respectfully submit this reply brief in support of their motion for a complete stay in the above captioned matter. The Viacom Defendants have sought similar relief in a related matter pending before this Court, *Gibson Guitar Corp. v. Harmonix Music Systems, Inc., et al.*, Civil Action No. 3:08-0294, and will be filing virtually the same reply brief in support of their motion to stay that case.

I.  **INTRODUCTION**

Case law and common sense compel that this matter be stayed in its entirety pending the United States Patent & Trademark Office's ("PTO's") reexamination of the '405 Patent on which Gibson has sued. The reexamination will determine whether there is an actual patent to litigate in this case, and if so, which patent claims will be at issue. Given the importance of reexamination proceedings to any patent suit, the general rule is that, once a reexamination begins, related court proceedings should be held in abeyance. This Court has wisely applied this rule of judicial economy in the past, and it should do so again here, without exception.

Now that the PTO has ordered its reexamination of the '405 Patent, Gibson concedes—as it must—that a stay is appropriate. In fact, Gibson has opted to waive its right to file a response to the PTO's decision to order reexamination of its patent.[2] Nevertheless, Gibson argues that the stay should be limited, and that during the stay it should be permitted to take discovery on its damages claims and on any prior art that may invalidate the '405 Patent. Gibson's proposal should be rejected on the following independent grounds:

- *First*, Gibson's proposed stay is unsupported by law. Courts regularly order *complete* stays pending reexamination, especially in newly filed cases. In the only two cases Gibson cites where a partial stay was entered, exceptional circumstances existed that are not present here.

- *Second*, the reexamination may dramatically affect what evidence might be discoverable. That indisputable fact renders the discovery Gibson seeks—as part of its proposed partial stay order—premature, unnecessary, and almost certainly a waste of time and resources.

---

[2] *See* Decl. of B. Jennifer Glad ("Glad Decl.") Ex. A (Gibson's Waiver of Patent Owner Statement (filed June 4, 2008)). The Declaration of B. Jennifer Glad is filed contemporaneously herewith.

- *Third*, Gibson's suggestions that it always favored a stay—and that Defendants failed to meet and confer over its scope—is belied by the parties' correspondence. To be clear, Gibson's argument for a partial stay is not one based on principle, but one borne of necessity, arising only after the PTO ordered reexamination of Gibson's patent.

**II. ARGUMENT**

**A. The Court Should Not Invoke The Rare Remedy Of A Partial Stay.**

As many courts have recognized, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). This Court, like many others, has regularly and properly applied that rule. *See, e.g.*, *Nilssen v. Universal Lighting Tech.*, 2006 WL 38909 (M.D. Tenn. Jan. 5, 2006); *Medicis Pharm. Corp. v. Upsher-Smith Labs, Inc.*, 486 F. Supp.2d 990, 993 (D. Ariz. 2007); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 11274, at *8-11 (S.D.N.Y. Aug. 10, 2000).[3]

The rule favoring broad stays makes sense. Reexamination proceedings can decisively change the focus of a patent case. If the PTO cancels Gibson's patent, this lawsuit will become a nullity. *See Tap Pharm. Prods. v. Atrix Labs., Inc.*, 2004 U.S. Dist. LEXIS, at * 7 (N.D. Ill. Mar. 5, 2004); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Alternatively, if Gibson's claims are substantially amended, the subject matter of the litigation will drastically change and Gibson's damages claims could be materially limited. *See, e.g.*, *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249-50 (Fed. Cir. 1997).

Such a sea change caused by the reexamination is likely in this case. In granting reexamination of the '405 Patent, the PTO has already found that the prior art submitted by Defendants raised a "substantial new question of patentability" regarding Gibson's patent. 35

---

[3] Pursuant to Local Rule 7.01(e), copies of unpublished decisions are attached hereto.

U.S.C. § 302; Glad Decl. Ex. B at 2 (PTO Decision Granting *Ex Parte* Reexamination). Indeed, according to the PTO's official statistics, there is more than a 70% chance that Gibson's claims will either be cancelled outright or amended during the upcoming reexamination.[4]

Because PTO reexaminations can critically impact the scope—or even the existence—of litigation, courts regularly stay litigation to see how the administrative proceeding will conclude. Courts impose such complete stays even where the civil case has been proceeding for months, discovery is well under way, and not all of the patents-in-suit are being reexamined. *See, e.g.*, *Tomco2 Equip. Co. v. S.E. Agri-Sys.*, 542 F. Supp.2d 1303 (N.D. Ga. 2008) (staying entire action; noting that, although case was late in discovery and only one of two patents were being reexamined, potential of amended patent claims favored stay). Here, of course, the one and only patent-in-suit is being reexamined. Courts especially favor complete stays where, as here, the litigation has just commenced. *See, e.g., ASCII Corp.*, 844 F. Supp. at 1381 (initial stage of litigation and little discovery to date supported complete stay); *NTP, Inc. v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 82063, at *5-9 (E.D. Va. Nov. 2, 2007) (complete stay where discovery had yet to commence); *Ho Keung Tse v. Apple, Inc.*, 2007 U.S. Dist. LEXIS 76521, at *5-6 (N.D. Cal. Oct. 4, 2007) (complete stay where little discovery had been completed).

Gibson urges this Court to ignore the general rule and argues that a partial stay is appropriate. It cites several cases for the proposition that courts have discretion in setting the boundaries of a stay, but cites only *two* cases where courts actually granted partial stays. The

---

[4] *See* Charron Decl. Ex. C at 2 (PTO *Ex Parte* Reexamination Filing Data (June 30, 2007)); *Tap Pharm. Prods.*, 2004 U.S. Dist. LEXIS at * 7. Gibson's claim that "90% of all *ex parte* reexaminations result in the patent surviving" is misleading at best. Opp. at 2. According to the PTO's official statistics, 59% of all *ex parte* reexaminations result in the claims being amended, and 12% result in all of the claims being cancelled. In only 29% of reexamination proceedings are the claims confirmed. *See* Charron Decl. Ex. C.

two cases Gibson cites are inapposite both because the facts bear no relation to those here, and because in neither case did the court grant the relief Gibson seeks.

1. *Laughlin Products*

The first case Gibson cites is *In re Laughlin Prods., Inc.*, 265 F. Supp.2d 525 (E.D. Pa. 2003). *Laughlin Products* holds that a partial stay may be appropriate where a complete stay sought by the plaintiff would unduly prejudice the defendants. The plaintiff in *Laughlin Products* sold patented self-tanning products. Seeking to slow the advance of its competitors, the plaintiff filed seven separate lawsuits against different defendants, in a number of states, accusing the defendants and their distributors of infringing its patent. *See id.* at 527. The Plaintiff actively publicized the lawsuits and the threat the suits posed to the defendants' businesses; it also threatened to bring suits against several more of the defendants' franchisees if they sold the offending product. *See id.* at 531, 533. The defendants countersued the plaintiff for, among other things, defamation and tortious interference, claiming the plaintiff was using the legal process improperly to quell competition. *See id*. at 527. Before the claims could be tested by the district court, the plaintiff sought PTO reexamination of its own patent and a complete stay of the court cases it had filed. *See id.* at 528. The defendants opposed the stay, arguing that if the cases were stayed, they would have to wait months if not years to litigate their counter-claims; their businesses would be under a cloud as plaintiff continued to promote the litigation it had filed; and one of the key witnesses in the case, who had cancer, could not be examined. *See id.* at 531-33.

The district court acknowledged its own uncertainty about whether to grant a stay, especially given that the defendants had "submitted convincing evidence" that the plaintiff knew about prior art that predated its patent application and reexamination request—suggesting that the plaintiff was using the patent reexamination procedure for improper tactical reasons. *See id.*

4

at 532.  Despite these concerns, the court felt compelled to grant the stay, given the strong statutory preference Congress had expressed for reexamination proceedings and the "reasons of sound judicial administration" that "many cases" have cited in granting such stays.  *Id*. at 538.

To balance the equities, the court permitted the defendants to continue to take discovery in support of their counter-claims, barred the plaintiff from suing new defendants absent meeting procedural requirements, and allowed the parties to depose two witnesses each and take limited document discovery.  *See id*. at 538.  In fashioning this relief, the court twice emphasized the "unusual" nature of the case.  *Id*. at 527, 528.  Unlike the usual case (like this one) where the party initiating a reexamination and requesting a stay is the *defendant*, the *plaintiff* initiated a reexamination of its own patent and the defendants vigorously opposed any stay.  *See id.* at 527.  Moreover, the court emphasized that "the parties and the judicial system ha[d] already invested much time and expense" in litigating and consolidating all the related cases.  *Id.* at 535.

The facts here stand in stark contrast.  There is no suggestion that any party laid in wait and used the reexamination procedure to secure an improper tactical advantage.  To the contrary, Defendants requested a reexamination just weeks after they were sued and, as in any typical patent case, Defendants have rightly requested a complete stay of the case pending that PTO proceeding.  Moreover, Gibson has made no claim—let alone cited any evidence—that Defendants have used the reexamination procedure to avoid potentially meritorious counter-claims or that a stay would deprive Gibson of access to key witnesses.  To the contrary, the primary evidence Gibson seeks to discover is marketing and sales data that reposes in corporate files and that need not be examined now while the PTO helps frame the very contours of the claims in this case, if any even survive the reexamination.  Finally, this case has not been underway for several years, is not on the eve of trial, and there can be no suggestion that

Defendants sought the reexamination and stay to avoid a decision on the merits. *Cf. id.* at 531-32 (collecting cases). To the contrary, Defendants seek an expedited ruling from the PTO determining whether Gibson's claims are even patentable.

### 2. *Cygnus Telecommunications*

The second case Gibson cites—*In re Cygnus Telecomms. Tech., LLC*, 385 F. Supp.2d 1022 (N.D. Cal. 2005)—is likewise readily distinguished. *Cygnus Telecommunications* was a multidistrict patent case involving consolidated lawsuits. As here, the defendants sought a stay after convincing the PTO to conduct a reexamination of plaintiff's patents. The district court granted a stay because, as here, the PTO procedure could "simplify the issues in question and trial of the case," and discovery had not already been completed. *Id.* at 1025. The only matters the court exempted from the stay order were initial disclosures required by the court's local rules, the litigation of pending summary judgment motions related to a settlement agreement between two parties, and two tangential motions that had already been briefed and were under submission. *See id.* at 1025-26. The partial stay that issued in *Cygnus Telecommunications* bears no relation to the one Gibson requests here. Gibson does not ask this Court to resolve minor, pending matters, but to open up Defendants to needless discovery.

### B. None Of The Three Forms Of Discovery Gibson Seeks Is Appropriate.

Gibson's proposed partial stay order seeks to exempt three categories of discovery from the stay. None should be permitted:

### 1. *Damages*

In category (iii) of its proposed order, Gibson seeks—while the case is stayed—to initiate "discovery with respect to damages and how the accused products are marketed." This makes no sense. The reexamination will determine whether Gibson has any patentable claims at all; and if it does, those claims are highly likely to require amending during the course of the reexamination

6

in order to survive. If any of the amended claims are not "substantially identical" to the original claims, the law will foreclose Gibson from recovering any damages for pre-reexamination infringement. *See* 35 U.S.C. § 252; *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) ("[i]f substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate"). Gibson's own case—*Laughlin Products*, 265 F. Supp.2d at 536—confirms this: "Of course, should certain claims of the '333 patent be cancelled or amended, that PTO action may limit Plaintiff's prospects of recovering damages, with respect to certain claims in this litigation." Gibson disputes whether this rule barring damages will apply (arguing the amendments might not result in substantive changes), but determining whether the amendments are material or not cannot occur until the reexamination is completed. *See id.* at 530. Thus, until the reexamination runs its course, it will be impossible to determine what the relevant time frame for damages discovery will be—some period of time in the past, or only one commencing after the reexamination proceedings conclude.

Waiting to take damages discovery not only makes sense in this case, but in *many* patent cases where a stay is not even sought. Courts often bifurcate damages issues in patent disputes, because a "finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expenses to the parties." *Swofford v. B & W, Inc.* 34 F.R.D. 15 (S.D. Tex. 1963), *aff'd,* 336 F.2d 406 (5th Cir. 1964) (bifurcating damages from liability for patent infringement and explaining that patent cases are particularly suited for bifurcation); *see also Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1544 (Fed. Cir. 1994) (bifurcating liability and damages phases in patent case); *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co.*, 2007 U.S. Dist. LEXIS 4652 (D. N.J. Jan. 22, 2007)

(bifurcating damages and willfulness issues in patent case to promote judicial economy and minimize juror confusion). Indeed, even where no PTO reexamination has been sought (much less ordered) courts often stay damages discovery until liability issues have been litigated. *See, e.g., Novopharm Ltd. v. TorPharm, Inc.*, 181 F.R.D. 308, 312 (E.D. N.C. 1998) (bifurcating patent case into liability and damages phases; staying damages discovery; explaining, "[o]ne of the purposes of bifurcation under Rule 42(b) is to defer costly discovery and trial preparation costs pending the resolution of preliminary liability issues"); *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1 (D. Puerto Rico 1997).[5]

2. *Prior Art*

In category (ii) of its proposed order, Gibson seeks "discovery with respect to prior art that Defendants assert renders the '405 Patent invalid." Gibson fails to cite a single case granting such relief, and Defendants are aware of none. This is for good reason. As Gibson concedes, both it and Defendants will be providing, or have already provided, the PTO with prior art as part of the reexamination procedure. *See* Opp. at 2 (citing 37 C.F.R. §§ 1.501(a), 1.502). Having this Court supplant the PTO (or operate as a back door to obtain discovery in those proceedings, where none is allowed) makes no sense. *Cf. Nilssen v. Universal Lighting Tech.*, 2006 WL 38909, at *2 (M.D. Tenn. Jan. 5, 2006) ("the PTO's own rules and procedures… govern the reexamination and the scope of information that can be submitted by the parties or relied upon by the PTO in reaching its decision"); *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440,

---

[5] Gibson asserts that damages discovery should begin now because this case involves multiple parties and such discovery could be protracted. Gibson has it exactly backwards. Because costly and burdensome damages discovery may be eliminated, if not significantly narrowed, by a reexamination, damages discovery is not truly necessary. Moreover, if the mere presence of multiple parties were reason enough to dispense with the general rule in favor of complete a stay, parties hoping for a nuisance settlement would be incentivized to add extra defendants to the caption and claim the need to take discovery no matter the pending reexamination.

8

1446 (10th Cir. 1992) ("Neither the patent examiner nor the patent owner has a right to discovery or the power to subpoena for a reexamination proceeding."). This is especially so, given that Defendants have already supplied the PTO with abundant prior art invalidating the '405 Patent and, as noted above, Gibson has chosen to waive its initial right in the PTO proceedings to submit a response.[6] Those proceedings are *ex parte*—strictly between Gibson and the PTO—and Defendants will not be a party to them. It is Gibson's burden, if it chooses to take it on, to defend its own patent.

3. *Other Discovery*

In category (i) of its proposed order, Gibson requests permission to "engage in document discovery unrelated to claim interpretation and expert issues." This vague and open-ended request will only invite further litigation. Creating such a loophole—and inviting disputes about what it means—would undermine the very principles of economy underlying the general rule providing for stays in cases of reexamination.

C. **Gibson's Assertion That Defendants Failed To Meet And Confer As Required Before Filing Their Motion Is Untrue.**

Gibson seeks to cast Defendants' motion to stay in an unfavorable light, suggesting that Defendants failed to meet and confer before filing their motion, and that Gibson was always willing to entertain a partial stay, just not a complete one. *See* Opp. at 1 n.2. This insinuation is inaccurate. In reality:

- On March 17, 2008, Gibson filed this lawsuit against the Retailer Defendants, and on April 4, 2008 filed an Amended Complaint adding the Viacom Defendants.

- On April 24, the Viacom Defendants sought PTO reexamination of the '405 Patent.

---

[6] *Compare* Charron Decl. Ex. A (Defendants' Reexamination Request (filed Apr. 24, 2008)), *with* Glad Decl. Ex. A (Gibson's Waiver of Patent Owner Statement (filed June 4, 2008)).

9

- On April 28, the Viacom Defendants emailed Gibson, stating "we intend to seek a stay of both [Middle District of Tennessee] cases based on the reexam, which you said you would take under consideration. Have you already decided to oppose that?"[7]

- The same day, Gibson responded: "Do we agree to a stay of both cases because of your reexam request? *No*."[8]

- After this email exchange, Defendants filed the present motion.

- Three weeks later, on May 29, the PTO ordered a reexamination of the '405 Patent.[9]

Not only is Gibson's current proposal a departure from its originally expressed views, it has no basis in law, will waste resources, and should be rejected.

## III. CONCLUSION

For the foregoing reasons, the Viacom Defendants and Retailer Defendants respectfully request this Court grant their Motion for a Stay Pending Reexamination.

---

[7] Glad Decl. Ex. B (email from M. Samuels to M. Siegal et al.).

[8] *Id.* (emphasis added).

[9] Equally without merit is Gibson's assertion that this motion should be rejected as tactical, because Activision Publishing, Inc. (a third party) has sued Gibson in California in a related patent action, and Activision asked the California court to stay this action. Activision is not a party here. Defendants are not parties to the Activision motion. This motion to stay is the clearly favored remedy when the PTO is reexamining the patent-in-suit. *See supra* Section II.B.

Dated:  June 18, 2008	Respectfully submitted,

By:  /s/ Aubrey B. Harwell, III
      Aubrey B. Harwell, III

| | |
|---|---|
| MARK A. SAMUELS (*pro hac vice*)<br>ROBERT M. SCHWARTZ (*pro hac vice*)<br>WILLIAM J. CHARRON (*pro hac vice*)<br>O'MELVENY & MYERS LLP<br>400 South Hope Street<br>Los Angeles, CA  90071-2899<br>Telephone:     (213) 430-6000<br>Facsimile:      (213) 430-6407 | WILLIAM T. RAMSEY, No. 9245<br>AUBREY B. HARWELL, III, No. 17394<br>NEAL & HARWELL, PLC<br>Suite 2000, One Nashville Place<br>150 4th Avenue North<br>Nashville, TN  37219-2498<br>Telephone:     (615) 244-1713<br>Facsimile:      (615) 726-0573 |

*Attorneys for Defendants Harmonix Music Systems, Inc., Viacom International Inc., and Electronic Arts Inc.*

By:  /s/ Samuel D. Lipshie (by Aubrey B. Harwell III w/ express permission)
      Samuel D. Lipshie

| | |
|---|---|
| EDWARD J. DEFRANCO (*pro hac vice*)<br>JAMES M. GLASS (*pro hac vice*)<br>QUINN EMANUAL URQUHART OLIVER & HEDGES, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: (212) 849-7000<br>Facsimile (212) 443-7100<br><br>HARRY A. OLIVAR, JR. (*pro hac vice*)<br>QUINN EMANUAL URQUHART OLIVER & HEDGES, LLP<br>865 Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100 | SAMUEL D. LIPSHIE<br>THOR Y. URNESS<br>JONATHAN D. ROSE<br>BOULT CUMMINGS CONNERS BERRY, PLC<br>1600 Division Street, Suite 700<br>P.O. Box 340025<br>Nashville, TN  37203<br>Telephone:  (615) 252-2332 |

*Attorneys for Defendants Wal-Mart Stores, Inc., Sears, Roebuck & Co., Target Corp., Kmart Corp., Amazon.com, Inc., GameStop Corp., and Toys-R-Us, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 18th day of June 2008, I caused a true and correct copy of the foregoing:

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR A STAY PENDING U.S.P.T.O.'S REEXAMINATION OF THE PATENT IN SUIT**

to be served via hand delivery and via the Court's electronic filing system upon the following counsel of record for plaintiff:

Douglas R. Pierce, Esq.
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
Telephone: (615) 259-3456
Facsimile: (615) 726-5419

and to be served via the Court's electronic filing system upon the following counsel of record for plaintiff:

Matthew W. Siegal, Esq.
Richard Eskew, Esq.
Jason M. Sobel, Esq.
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400

                                                   /s/ Aubrey B. Harwell, III
                                                       Aubrey B. Harwell, III

CC1:786878.1