**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GIBSON GUITAR CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08cv0279** |
| | ) | |
| **WAL-MART STORES, INC. *ET AL.*,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Before the Court are two motions:  (1) the Motion to Dismiss or Stay (Doc. No. 37) filed by defendants Amazon.com, GameStop, Kmart, Sears, Target, Toys-R-Us and Wal-Mart (collectively, the "Retailer Defendants"); and (2) the Motion to Stay Pending the U.S.P.T.O.'s Reexamination of the Patent in Suit (Doc. No. 53), filed by defendants Harmonix Music Systems, Inc. ("Harmonix"), Electronic Arts, Inc. ("EA") and Viacom International Inc. ("Viacom") (collectively, the "Viacom Defendants") in which the Retailer Defendants have joined.  Also before the Court is the Viacom Defendants' Motion for Hearing on their motion to stay (Doc. No. 60).  The Court, having determined that it can decide the issue on the basis of the written briefs and that oral argument will not assist it in deciding the motions, will deny the motion for hearing.  Further, for the reasons set forth below, the Court will grant in part the Retailer Defendants' motion to stay, and will likewise grant the Viacom Defendants' motion to stay pending the U.S.P.T.O.'s reexamination.

**I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff Gibson Guitar Corporation ("Gibson") is perhaps best known for engaging in the business of developing, manufacturing and selling musical instruments, included but not limited to electric and acoustic guitars.  According to allegations in the Amended Complaint, Gibson is also the sole owner of United States Patent No. 5,990,405 entitled "System And Method For Generating And Controlling A Simulated Musical Concert Experience," issued on November 23, 1999 (the " '405 Patent").  The '405 Patent is "directed to systems and apparatuses for electronically simulating participation in a musical performance."  (Am. Compl. ¶ 30.)

Gibson filed its initial Complaint against the Retailer Defendants on March 17, 2008 asserting claims based on alleged infringement of the '405 Patent. Gibson amended its complaint on April 4, 2008 to add several new defendants—Sears, Roebuck & Co. (another retailer defendant), Harmonix, MTV (a division of Viacom International Inc.) and EA—as well as new factual allegations of infringing activities against the already existing Retailer Defendants. (Doc. No. 19.) Pursuant to an agreement among the parties that Viacom rather than MTV was the appropriate party, the Magistrate Judge entered an Order on May 14, 2008 that the Clerk terminate MTV as a party and substitute therefor Viacom International Inc.

### A.      The Claims Against the Retailer Defendants

Gibson alleges that the Retailer Defendants have **sold** and continue to sell products that infringe, contribute to or induce the infringement of the '405 Patent, specifically (1) a series of video games under the trade name "Guitar Hero®" (the "Guitar Hero Video Games") along with various Guitar Hero® components, *e.g.*, guitar-style instruments that are sold separately and together with one or more versions of the Guitar Hero Video Games (collectively with the Guitar Hero Video Games, the "Guitar Hero Products"); (2) the video game Rock Band™ (hereafter, "Rock Band") along with various Rock Band components including guitar-style instruments, drums and microphones sold separately and together with the Rock Band™ video game (collectively, the "Rock Band Products"); and (3) video displays, video game consoles and audio equipment that "can be part of systems that infringe the '405 Patent" ("Audio/Visual Gaming Products"). Gibson seeks injunctive relief, damages, treble damages, attorney fees and costs against the Retailer Defendants as well as the other defendants in this action.

The Retailer Defendants, rather than answering the complaint, filed their Motion to Dismiss.

### B.      The Claims Against the Viacom Defendants

Gibson alleges that the each of the Viacom Defendants "has committed and continues to commit, has contributed and continues to contribute to, and has induced and continues to induce acts of patent infringement." (Am. Compl. ¶¶ 11–13.) More specifically, Gibson alleges that Harmonix "created, developed, sold and/or induced the sale" of the Guitar Hero Video Games, which allegedly infringe the '405 Patent, and sold or caused the sale of Guitar Hero Products in this district via several retailers of video games. (Am. Compl. ¶¶ 32, 41, 42.) Gibson also alleges that Harmonix created, developed and/or has sold and continues to sell the Rock Band video game, which allegedly infringes the '405 Patent. EA

is allegedly the exclusive distributor of the Rock Band Products, and Viacom publishes, markets, sells and/or induces others to sell the Rock Band Products.  (Am. Compl. ¶¶ 43, 48–52.)

The Viacom Defendants have answered the complaint, generally admitting that Harmonix "developed" the Guitar Hero Video Games and "created and developed" Rock Band, but denying the allegations of patent infringement.  The Viacom Defendants also assert a counterclaim seeking a judicial declaration that they have not infringed the '405 Patent, and that the '405 Patent is invalid.

### C.    Development of the Allegedly Infringing Products

As indicated above, Gibson alleges in this lawsuit that Harmonix "developed" the original Guitar Hero Video Games as well as Rock Band.  According to the Retailer Defendants, the Guitar Hero Video Games are actually published and distributed by Activision Publishing Inc. ("Activision"), which is not a party to this lawsuit.  While the Retailer Defendants essentially claim that Activision is the "manufacturer" of the Guitar Hero Products, Gibson asserts that "Activision's development role was trivial – as that of a mere distributor and seller of the Guitar Hero products to wholesalers and retailers."  (Doc. No. 73, at 9.)  In any event, it is apparent that Activision sells the Guitar Hero Video Games and other Products to retail customers, including the Retailer Defendants here, which in turn resell the products in their original packaging to the ultimate consumers, end-users.

According to the Retailer Defendants, the original Guitar Hero video game was first demonstrated at the May 2005 Electronic Entertainment Expo in Los Angeles.  That version of the game was published by RedOctane, Inc., using code written by defendant Harmonix.  Activision acquired RedOctane and released subsequent versions of the Guitar Hero Video Games.

RedOctane and Gibson had entered into an agreement in July 2005 in connection with the first Guitar Hero game pursuant to which Gibson granted RedOctane the right to use Gibson's trademarks, trade names and trade dress.  After Activision acquired RedOctane, Activision and Gibson entered into a "License and Marketing Support Agreement," effective November 1, 2006, in which Gibson granted Activision the right to use Gibson's trademarks, trade names and trade dress in connection with the Guitar Hero Video Games in return for a fully paid license fee.  The License Agreement contains a forum-selection clause requiring disputes arising out of it be brought in state or federal courts in Los Angeles,

California. The License Agreement expires on November 1, 2008; Gibson and Activision have, to date, not been successful in agreeing to the terms of an extension to the Agreement.

On January 7, 2008, Gibson sent Activision a letter charging that the Guitar Hero Video Games infringed the '405 Patent and requesting that Activision either take a license or stop selling Guitar Hero. Activision responded on January 17, 2008 with a request that Gibson explain the basis for its infringement allegations. On February 18, 2008, Gibson sent Activision a chart comparing the Guitar Hero Video Games to certain claims in the '405 Patent. Meanwhile, on February 20, Gibson had also notified Activision that it had breached the License Agreement by selling Guitar Hero Video Games in "music specialty stores" which Gibson maintained was its exclusive right under the License Agreement. Activision denied selling to music specialty stores but Gibson nonetheless terminated the Agreement, asserting that Activision had breached it in other ways as well.

### D. The California Action

On March 10, 2008, Activision notified Gibson that it had no interest in pursuing a patent license. On March 11, 2008, six days before Gibson filed suit in this Court, Activision filed a declaratory judgment action against Gibson in the United States District Court for the Central District of California, styled *Activision Publishing Inc. v. Gibson Guitar Corp.*, Case No. CV08-01653 (the "California Action"), before Judge Mariana R. Pfaelzer. Activision filed the California Action seeking a declaratory judgment that the '405 Patent is invalid, unenforceable, and is not infringed by the Guitar Hero Video Games. In addition to asserting that the '405 Patent is invalid and unenforceable and is not infringed by the Guitar Hero Video Games, Activision also asserted that Gibson was estopped from alleging that the Guitar Hero Video Games infringe the '405 Patent and that Gibson had granted Activision an implied license in the patent. Activision later amended its complaint in the California Action to add a request for a declaration that it had not breached the License Agreement. Gibson filed its answer and counterclaim, under seal, on June 30, 2008.

### E. Proceedings in the California Court

Judge Pfaelzer for the United States District Court for the Central District of California has issued several rulings in the California Action that are potentially pertinent here. First, the court entered an Order denying Activision's motion to enjoin Gibson from pursuing the Tennessee Action, which Activision

characterized as a " 'second-filed infringement suit' involving the same patent against [Activision's] customers." (California Action, 5/20/2008 Order at 3.) In reaching its decision, the California court observed that it had the discretion to enjoin Gibson from proceeding with a later-filed infringement suit in another district court. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990). However, the court also found that, while Activision presented "several compelling points about the identity of the cases proceeding here and in Tennessee, including the presence of an indemnification agreement between Activision and [the Retailer Defendants,] . . . the first-to-file rule . . . is more naturally applied by a court considering transferring, staying or dismissing a <u>second</u>-filed action when a similar complaint has been filed elsewhere." (California Action, 5/20/2008 Order at 4 (citing cases).) The court continued: "The Tennessee Court has multiple suits proceeding similar to this one, and is better positioned than this Court to assess the scope, substance, and procedural history of each of the second-filed suits." (*Id.* at 5.)

In addition, however, the court also denied Gibson's motion to dismiss or transfer to this Court the patent claims pending in the California Action pursuant to 28 U.S.C. § 1404(a), holding that "the § 1404(a) factors – when combined with the general rule favoring the forum of the first-filed case – favor adjudicating Activision's patent claims in [the California] Court." (*Id.*) To reach that conclusion, the California Court specifically held that the anticipatory-filing exception to the first-to-file rule was inapplicable. The California Court also rejected Gibson's other arguments in support of transfer, finding that (1) the convenience of the witnesses and parties did not favor transfer Tennessee; (2) the public interest did not favor adjudicating the matter in Tennessee; and (3) the California Court's docket was not so crowded that it would have difficulty ruling expeditiously on the matters before it. In fact, the California Court expressly stated that it would "proceed as expeditiously as the parties desire, whether for only the claims between Gibson and Activision or any other claims the Tennessee Court transfers here." (California Action, 5/20/2008 Order at 8–9.) Finally, the court noted that "while resolution of [the California Action] will not necessarily dispose of the Rock Band allegations, it will significantly advance the proceedings in Tennessee . . . because issues of patent invalidity and claim construction will certainly overlap, and issues of Rock Band's infringement will likely overlap due to the conceptual similarity in the games." (*Id.* at 8.)

More recently, on July 22, 2008, the California court ruled on Gibson's "Motion for a Partial Stay Pending the U.S.P.T.O.'s Reexamination of the Patent in Suit." Gibson's motion in the California court was consistent with its response to the Viacom Defendants' Motion to Stay in this case. (*Compare* Doc. No. 82, *with* California Action, 6/30/2008 Motion, Doc. No. 107, at 7, 9–10.) In both fora, Gibson favors a partial stay that would permit it to conduct discovery of information it claims would likely not be affected by the U.S.P.T.O.'s reexamination. For instance, it maintained in the California court that it should be permitted to discover "prior art, to the extent Activision is in possession of prior art that was not submitted to the PTO in connection with the Reexamination," in order to give Gibson "the opportunity to make that art of record before the PTO[.]." (California Action, 6/30/2008 Motion at 9.) Gibson also sought to conduct "discovery relating to sales and marketing of the accused products" as that area would purportedly "not be affected by reexamination." (*Id.* at 10.) Despite the fact that the Retailer Defendants, who are defended and indemnified by Activision, have joined in the Viacom Defendants' motion for a full stay in this action, Activision opposed a stay altogether in the California action, whether partial or not, arguing that (1) partial stays are highly unusual; (2) the partial stay sought was "unwieldy and unfair" insofar as it allowed Gibson alone to proceed with certain discovery, which would give Gibson a tactical advantage; and (3) judicial economy favored denial of the stay. Activision also argued that its position in the California Action was consistent with the Retailer Defendants' position in the Tennessee Action, since Activision and the Retailers had always considered that Activision was the real party in interest in both cases because it designs, manufactures and markets the Guitar Hero Video Games, and that the California Action should go forward and the Tennessee Action should not. The California Court agreed with Activision and denied the motion to stay in its entirety.

## II.    DISCUSSION

### A.    The Retailer Defendants' Motion to Dismiss or Stay

The Retailer Defendants seek to dismiss or, alternatively, to stay this action in the Middle District of Tennessee ("Tennessee Action") in favor of the California Action. As grounds for the stay or dismissal, the Retailer Defendants assert that the first-to-file rule mandates dismissal or a stay of this entire action or, alternatively, of those claims related to the Guitar Hero Video Games. The Retailer Defendants also argue that the forum-selection clause in the License Agreement with Activision requires Gibson to bring

its claims in California and provides an alternative basis for dismissal of this action. Gibson opposes the motion and denies that either the first-to-file rule or the forum-selection clause requires a stay or dismissal of the Tennessee Action.

The Court will not seriously consider the forum-selection argument other than to point out that this patent-infringement action is not governed by the License Agreement between Activision and Gibson, and the Retailer Defendants have no standing to enforce a forum-selection clause in an agreement to which they are not parties. The License Agreement does not provide a basis for dismissal of this action.

With respect to the first-to-file rule, Gibson argues in its response in opposition to the Retailer Defendants' motion that (1) the first-to-file rule is inapplicable because the "anticipatory filing exception" applies; (2) the "customer suit" exception does not apply; and (3) the lack of complete identity between the parties and issues in the California and Tennessee actions prevents application of the first-to-file rule. More specifically, in support of its argument regarding the lack of identity, Gibson argues that (a) the Defendants overstate Activision's role as publisher of the allegedly infringing Guitar Hero products, and Harmonix confirms that Activision was a "mere distributor and seller of the Guitar Hero products to wholesalers and retailers" (Doc. No. 73, at 9); (b) Harmonix's role in the development of the Guitar Hero products is substantial, and there is no question that Harmonix created and developed the Rock Band game; (c) the California Action does not address independent infringement by the Retailers and the Viacom Defendants; and (d) Activision may have defenses available to it that are not available to the Retailer Defendants. Finally, Gibson argues that the § 1404(a) "convenience factors" weigh in favor of denying the motion to transfer, including the convenience of parties and witnesses; the location of relevant documents and access to sources of proof; the locus of operative facts; the forum's familiarity with governing law; the weight accorded the plaintiff's choice of forum; and public and judicial interests.

As set forth below, the Court finds it appropriate to apply the first-to-file rule to avoid duplicative litigation at least as to the issues of patent validity and infringement.

### (1) The First-to-File Rule

"The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving *nearly identical parties and issues* have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to

judgment.' " *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001) (emphasis added) (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)). "District courts have the discretion to dispense with the first-to-file rule where equity so demands. . . . Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id.* (citations omitted).

The first issue presented here is whether the California Action and this case are sufficiently similar to warrant application of the first-to-file rule and, if so, whether some equitable factor applies that nonetheless weighs against application of the rule.

The Sixth Circuit has held that a duplicative suit is one in which the issues "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). The parties and issues need not be precisely identical. *Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 [(N.D. Ohio 1999). "Importantly, the parties and issues need not be identical. Rather, the crucial inquiry is whether the parties and issues substantially overlap." *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005) (citations omitted).

As Gibson points out, this suit and the California Action are not materially on all fours given the presence of the Viacom Defendants in this case as well as the allegations against the Retailer Defendants involving the Rock Band products. Gibson also argues that Activision has defenses available to it that are not available to the Retailer Defendants, including laches and estoppel, among others.

Notwithstanding, the Court finds that the claims against the Retailer Defendants, to the extent they pertain to the Guitar Hero Video Games, are largely duplicative of the claims against Activision pending in the California Action. Activision and the Retailer Defendants are in privity because Activision is defending and indemnifying the Retailer Defendants in this action, based on the fact that the Retailer Defendants sell allegedly infringing products published and distributed by Activision. The threshold question in both cases is the validity of the patent and whether the Guitar Hero Video Games infringe the '405 Patent, regardless of whether Activision is actually the "manufacturer" and regardless of whether any of the defendants are "direct" as opposed to "indirect" infringers. Only after the issues of patent validity and infringement are resolved will the other issues become relevant, including the issue of damages

against the Retailer Defendants.  The Court therefore finds that, at least with respect to the Guitar Hero claims asserted against the Retailer Defendants, the two suits are similar enough to warrant application of the first-to-file rule.

The Court further defers to Judge Pfaelzer's decision in the California Action that the anticipatory-filing exception does not apply.  This Court agrees that there is simply no evidence that Activision's suit was brought in bad faith or that Activision engaged in forum shopping.

The customer-suit exception invoked by Gibson is likewise inapplicable.  That exception may justify an exception to the "first-to-file" rule when the first suit is a "customer action" against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory judgment action brought by the manufacturer of the accused goods.  *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (2d Cir. 1989).  Here, the first suit was a declaratory judgment action brought by the (putative) manufacturer, and the second suit is primarily a customer suit, at least as pertains to the claims against the Retailer Defendants.  In any event, regardless of how the two suits are classified, the customer-suit exception does not provide a basis for ignoring the first-to-file rule in this case.

The bottom line is that the California Court has made it clear that it intends to proceed quickly with resolution of the issues of patent validity and infringement and this Court finds it appropriate to defer to that court and to avoid duplicative litigation as to those issues. It would be inequitable and inefficient to require Activision (who is defending and indemnifying the Retailer Defendants here) to litigate the same issues against the same opposing party in two different fora.   The Court finds that transfer is not appropriate because of the presence of the Viacom Defendants and various claims that are not involved in the California Action, over which jurisdiction in that forum has not been established.  Instead, the Court will grant the motion to stay the claims against the Retailer Defendant relating to the Guitar Hero products, pending resolution of the validity and infringement issues in the California Court.  The Retailer Defendants will be directed to file a report in this case every six months beginning from entry of this Order regarding the status of the proceedings in the California Action, and any party may move to lift the stay once the California Court has resolved the validity and infringement issues.

**B.**     **The Viacom Defendants' Motion to Stay**

Gibson does not oppose the Viacom Defendants' motion to stay and in fact concedes that a stay is appropriate. *Cf. Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." (internal citations omitted)). Gibson simply seeks, instead of a full stay, a partial stay that would permit it to conduct some limited discovery on the questions of prior art and damages. The Court finds that the request for such a partial stay is unwarranted and unsupported by the law. Accordingly, in order to conserve judicial resources and avoid replication or duplication of effort, the Court will grant the Viacom Defendants' motion to stay this matter in its entirety pending the U.S.P.T.O.'s reexamination of the patent in suit.

The Viacom Defendants will be directed to file a report in this case every six months beginning from entry of this Order regarding the status of the proceedings in the U.S.P.T.O., and any party may move to lift the stay once the U.S.P.T.O. has completed its reexamination of the patent.

III.     **CONCLUSION**

For the reasons discussed above, the Court will grant the Retailer Defendants' Motion insofar as it seeks a stay of the claims asserted against the Retailer Defendants pertaining to the sale of the Guitar Hero Products. The Court will also grant the Viacom Defendants' motion to stay the matter in its entirety pending the U.S.P.T.O.'s reexamination of the patent in suit. The Court will require regular status reports, and will entertain a motion to lift the stays by any party upon a showing of good cause.

An appropriate Order will enter.


Thomas A. Wiseman, Jr.
Senior U.S. District Judge